COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Friedman and Senior Judge Clements
Argued at Richmond, Virginia

WILLSON FAMILY, LLC, ET AL.

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 2203-23-2          JUDGE FRANK K. FRIEDMAN
                                                 APRIL 1, 2025

BOARD OF SUPERVISORS OF
  HANOVER COUNTY

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Monica T. Monday (John G. Dicks III; Amanda M. Morgan; Gentry
Locke, on briefs), for appellants.

Dennis A. Walter, County Attorney (Rebecca B. Randolph, Deputy
County Attorney; Leah D. Han, Senior Assistant County Attorney,
on brief), for appellee.

Willson Family, LLC, and Rogers-Chenault, Inc., appeal the circuit court's order granting

the Board of Supervisors of Hanover County's demurrer. Appellants argue that the circuit court

erred in finding the Board's denial of their rezoning application "fairly debatable" and

dismissing the case before an evidentiary hearing. Finding no error, we affirm the circuit court's

ruling.

BACKGROUND

Appellants filed an application in September 2021 seeking to rezone property in Hanover

County from agricultural use to single-family residential. Appellants sought to build a

residential subdivision called "Rock Springs" on a 161-acre lot. In their final submitted plan,

appellants proposed building 176 homes at 1.1 units per acre.

_____

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

During public comment periods, including at the planning commission and Board meetings, attendees worried that Rock Springs's development would cause undesirable housing congestion and that the area would lose its "rural feel." Appellants' traffic impact analysis also showed that traffic on Winns Church Road in 2027 would be 25 to 75% heavier because of the development. The appellants amended their plans on two occasions, attempting to address concerns raised by members of the public. Neither amendment directly addressed the issues; instead, appellants reduced the proposed number of residential units. Appellants did emphasize that the County's comprehensive plan designated the area as "Suburban General," which allows for up to three units per acre.

The planning commission held three public hearings, one on the original application and two on the amended applications. Director of Planning for Hanover County David Maloney stated that Rock Springs's completion would cause Elmont Elementary School to reach 91% capacity, which might require the use of "learning cottages." Arguing that "there's a difference between school capacity and school resources, and the resources are stretched very thin," Board member Michael Herzberg stressed that the school division already needed 39 more bus drivers.[1]

Board member Susan Dibble stated that members of her district had expressed concerns to her in "numerous emails, phone calls, and private conversations." Board member Angela Kelly-Wiecek noted that any state funding to address roadway issues would only occur after the problems arose. Following the hearings, the planning commission recommended that the application be denied, and the Board voted to deny the zoning request.

Appellants filed a complaint in the circuit court seeking a declaratory judgment that the Board's denial was arbitrary and capricious. Appellants also asked the circuit court to order that

---

[1] The Hanover County School Board did not review or take an official position on the subdivision plan.

the Board approve the zoning application. The Board filed a motion craving oyer, seeking inclusion of the legislative record from the hearings before the Board. The parties consented, and the motion was granted; the additional documents became part of the record. The Board then demurred, arguing that the legislative record established that its decision was "fairly debatable" and therefore properly within its discretion. After a hearing, the circuit court agreed with the Board, sustained the demurrer, and dismissed appellants' suit.

ANALYSIS

"At the demurrer stage, we must take as true all material facts properly pleaded." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 26 (2024). "Because appellate review of the sustaining of a demurrer involves a matter of law, we review the circuit court's judgment *de novo*." *Glazebrook v. Bd. of Supervisors*, 266 Va. 550, 554 (2003).

A circuit court may rule on a demurrer where the pleadings have been "extended" through the incorporation of other documents. *Eagle Harbor, LLC v. Isle of Wight Cnty.*, 271 Va. 603, 620 (2006). Documents brought into a case through a motion craving oyer are incorporated into the pleadings and may be used to "amplify" the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer. *Hale v. Town of Warrenton*, 293 Va. 366, 366 (2017) (quoting *EMAC, LLC v. Cnty. of Hanover*, 291 Va. 13, 21 (2016)). Additionally, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *EMAC, LLC*, 291 Va. at 21.

Appellants assert that the circuit court erred in sustaining the Board's demurrer because the denial of their application was not "fairly debatable, bearing a substantial relationship to the public health, safety, morals, or general welfare of the County's residents" and because they claim the Board's decision was arbitrary and capricious. Appellants argue that the Board acted

based on "vague, unsubstantiated, and objectively contradicted concerns." Appellants also argue that the legislative record does not support a finding that roads would be impacted or that local schools could not handle the increased population. The Board responds by arguing that the trial court properly found the Board's decision was fairly debatable and that the record, properly before the circuit court, provided a basis for the Board's decision.

Legislative actions, such as the grant or denial of an application for rezoning, are presumed to be reasonable both upon review before the circuit court and appeal to this Court. *Bd. of Supervisors v. Lerner*, 221 Va. 30, 34 (1980). Reasonableness depends on whether "the matter in issue is fairly debatable"—whether objective and reasonable people may logically arrive at different conclusions about the correct result. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 532 (2003) (quoting *Lerner*, 221 Va. at 34).[2] "Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] 'must be sustained.'" *Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974).

Zoning ordinances exist to "promot[e] the health, safety or general welfare of the public." Code § 15.2-2283. They consider population density and its impact on transportation and schools. Code §§ 15.2-2283, -2284. Additionally, zoning ordinances should foster a "harmonious community" and satisfy "the existing use and character of property." Code §§ 15.2-2283, -2284. Although a "zoning authority must consider" these factors, "[t]he

---

[2] Appellants' suggestion that the circuit court wrongly applied the fairly debatable standard to the Board's decision in this case is inconsistent with Virginia precedent. *See Robertson*, 266 Va. at 532; *see also Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974).

weighing of the relevant factors is a legislative function." *Bd. of Supervisors v. Miller & Smith, Inc.*, 242 Va. 382, 384 (1991).

> I. The Circuit Court did not err in Finding the Board's Decision was Fairly Debatable and not Arbitrary and Capricious

It is clear from the record that, in denying the rezoning application, the Board considered the impact on local roads and schools. The Board identified specific roadways that would be burdened with significantly increased traffic and the impact the burden would have on locals. The Board also doubted that the school division could provide high-quality education to students with the increased student population. Moreover, the Board expressly considered not only school capacity, but the availability of resources to meet the expected increased needs. Finally, the Board noted the extent of local residents' objections to the alteration of the community's character by building new residential housing on agricultural land.

Citing to *Manors, LLC v. Board of Supervisors*, 76 Va. App. 737, 753 (2023), appellants argue that the Board should not have considered citizens' subjective opinions. But this Court held in *Manors* that boards should only consider "portions of the public comments relevant to the request at hand." *Id.* We did not hold that all subjective opinions expressed by the public are irrelevant. To the contrary, resident concerns are "certainly relevant," and the Board would have "'thwart[ed] democracy'" if it had disregarded them. *Loch Levan Land Ltd. P'ship v. Bd. of Supervisors*, 297 Va. 674, 692 (2019) (quoting *AT&T Wireless PCS v. City Council of Va. Beach*, 155 F.3d 423, 431 (4th Cir. 1998)). Boards must consider citizens' "worries." *Id.*

The legislative record reflects that the Board rejected the zoning application because of concerns about increased traffic, school overcrowding, and community harmony. Given such evidence of reasonableness, the Board's decision was at least "fairly debatable," and the circuit court did not err in making that finding. *See Robertson*, 266 Va. at 532.

II. That the Board's Action Conflicts with the Hanover County's Comprehensive Plan does not Automatically make the Board's Decision Arbitrary and Capricious

Appellants argue that the Board's action impermissibly conflicts with Hanover County's comprehensive plan and that their development plan was consistent with the comprehensive plan. Appellants contend that this conflict means the Board's actions were arbitrary and capricious.

Code § 15.2-2223 requires that each locality adopt a comprehensive plan and consider it when making land use decisions. "As applied to private facilities, a comprehensive plan is generally 'a guideline for the development and implementation of a zoning ordinance' and 'does not, by itself, act as an instrument of land use control.'" *Hartley*, 80 Va. App. at 16-17 (quoting 1987-88 Op. Va. Att'y Gen. 212, 213). "The 'minimum standards of the [c]omprehensive [p]lan may be only guidelines and not requirements to be applied inflexibly,' while the local zoning body has 'discretion to decide whether to adhere to those standards or to follow some other reasonable approach' in evaluating individual rezoning applications." *Id.* at 17 (alterations in original) (quoting *Lerner*, 221 Va. at 37). Even if a Board's decision is "inconsistent with the comprehensive plan, that fact alone is not enough to meet [the] burden of showing 'probative evidence of unreasonableness.'" *Id.* at 21 (quoting *Snell Constr. Corp.*, 214 Va. at 659). "Failure to align with the comprehensive plan does not render a zoning amendment arbitrary and capricious as a matter of law; rather, a reviewing court must 'apply the presumption of validity' to the legislative action and evaluate whether the change was supported by some evidence of reasonableness." *Id.* at 18 (citing *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 621-23 (2013)).

The County had designated the subject property as "Suburban General" in the comprehensive plan, but that alone did not require the Board to rezone the property from agricultural use to single family residential based on the appellants' application. When

considering appellants' application, the Board knew that the comprehensive plan had designated the area as Suburban General. When evaluating whether to grant the rezoning request, the Board retained discretion to give greater weight to concerns about the increase in traffic, the strain on school resources, and incongruity with the surrounding area. These considerations are evidence of reasonableness required by the statute, and the circuit court did not err in making that finding. *See Snell Constr. Corp.*, 214 Va. at 659 ("If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance 'must be sustained'.").

III. The Circuit Court did not err by Considering the Demurrer with the Aid of the Sizable Legislative Record

Appellants also argue that the circuit court erred in granting the demurrer because it denied them the opportunity to have an evidentiary hearing. However, in considering the demurrer, the circuit court was able to consider the Board's significant legislative record, which became part of the pleadings through the parties' joint consent order on the Board's motion craving oyer, a proper procedural tool. *See Byrne v. City of Alexandria*, 298 Va. 694, 701 (2020) (holding that the circuit court did nor err in granting a motion craving oyer of the legislative record).

Appellants note that a demurrer often short circuits evidentiary opportunities for the litigants—but, here, the circuit court had access to a robust record documenting the Board's issues of concern. The procedural posture in this case is similar to the situation in *Byrne*, where the Supreme Court found that "[t]he legislative record added to the pleadings as a result of the motion craving oyer makes clear" that the reviewing body "when deciding Byrne's appeal, had all the essential facts before it, considered all opinions and arguments presented by interested parties, and made its decision within its lawful authority." *Id.* at 702. The same is true here; the circuit court correctly concluded, at the pleading stage, that the Board's decision was "fairly

debatable." *See id.* We find no error in the circuit court granting a demurrer based on this record.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*